THE STATE, EX REL. TOWNSEND, *v.* BUSHONG, SUPT.

(No. 881—Decided June 15, 1945.)

*Mr. Francis W. Durbin,* for petitioner.

*Mr. Hugh S. Jenkins,* attorney general, and *Mr. H. S. Zwolinski,* for respondent.

GUERNSEY, J. This is a proceeding in *habeas corpus* originating in this court.

Petitioner, Frank Townsend, alleges that he has been confined in the Lima State Hospital at Lima, Ohio, since the 7th day of February 1936; and that he is sane and is being unlawfully restrained of his liberty by Dr. R. E. Bushong, superintendent of Lima State Hospital.

In his return to the writ of *habeas corpus* issued herein, the superintendent represents that he has Townsend in custody, and that he has had such custody since February 7, 1936, by virtue of a commitment by the Common Pleas Court of Mahoning county, Ohio, under the provisions of Section 13441-2, General Code.

On the trial of this cause it was stipulated by counsel for the respective parties that at the January term, 1936, of the Common Pleas Court of Mahoning county, Ohio, an indictment was returned by the grand jury of that county charging that Townsend, on the 15th day of December 1935, in such county unlawfully killed Alvin Townsend, the indictment being filed in the Common Pleas Court of the county and designated as case No. 14309 on the criminal docket of the court.

It was further stipulated by counsel that certain proceedings were had in the Common Pleas Court on the indictment and in the cause, resulting in an order being made by the court and entered on the journal thereof at the January term 1936, under date of January 28, 1936, as follows:

"This day comes the prosecuting attorney on behalf of the state of Ohio and it coming to the notice of the court of a claim of insanity of defendant it is ordered by the court that Dr. D. H. Smelzer and Dr. W. X. Taylor be and they are hereby appointed to examine defendant as to sanity.

"This day comes the prosecuting attorney on behalf of the state of Ohio the defendant comes into court in custody of the sheriff and with counsel and this cause coming on for hearing as to sanity or insanity of defendant and a jury being waived the court having heard the evidence of Drs. Smelzer and Taylor and arguments of counsel finds the said defendant is now insane.

"It is therefore considered ordered and decreed by the court that said defendant be taken hence by the sheriff to the jail of Mahoning county and from there to the state hospital for criminal insane at Lima, Ohio, there to be confined until he be restored to reason and to be returned and proceeded against as provided by law.

"It is further ordered that a fee of fifty ($50) each be and is hereby allowed to Dr. D. H. Smelzer and Dr. W. X. Taylor. Clerk ordered to make certified copy of all entries and proceedings in this case."

Although the return of the superintendent to the writ recites that he has custody of the petitioner by virtue of a commitment by the Common Pleas Court, under the provisions of Section 13441-2, General Code, the commitment was made pursuant to the provisions of both Sections 13441-1 and 13441-2, General Code, which are sections of the Criminal Code of Ohio. The sections are as follows:

Section 13441-1. "If the attorney for a person accused of crime pending in the Court of Common Pleas, whether before or after trial suggests to the court that such person is not then sane, and a certificate of a rep-

utable physician to that effect is presented to the court, or if the grand jury represents to the court that any such person is not then sane, or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person, or in its discretion may impanel a jury for such purpose. If three-fourths of such jury agree upon a verdict, such verdict may be returned as the verdict of the jury. If there be a jury trial and three-fourths of the jury do not agree, another jury may be impaneled to try such question.''

Section 13441-2. ''If the court or jury find upon the hearing provided for in the next preceding section, that the accused is sane, he shall be proceeded against as provided by law. If the court or jury find him to be not sane, he shall be forthwith committed by the court to an insane hospital within the jurisdiction of the court; provided, that if the court deem it advisable, it shall commit such person to the Lima State Hospital until he be restored to reason, and upon being restored to reason the accused shall be proceeded against as provided by law.''

It is well settled at common law that a person while insane cannot be tried, sentenced or executed. 14 American Jurisprudence, 801, Section 44; 23 Corpus Juris Secundum, 233, Section 940.

Hence, at common law, if at any time while criminal proceedings are pending against a person accused of a crime, whether before, during or after the trial, the trial court, either from observation or upon the suggestion of counsel, has facts brought to its attention which raise a doubt of the sanity of the defendant, the question should be settled before further steps are taken. 14 American Jurisprudence, 801, Section 44; 23 Corpus Juris Secundum, 233, Section 940.

At common law the method of settling this question

is generally within the discretion of the trial court and the court itself can enter upon the inquiry or submit the question to a jury impaneled for that purpose. 14 American Jurisprudence, 802; 23 Corpus Juris Secundum, 235.

A trial of the question of present insanity is not a trial of an indictment but is preliminary to such trial, and the object is simply to determine whether the person charged with an offense and alleged to be insane shall be required to plead and proceed to the trial of the main issue of guilty or not guilty. 14 American Jurisprudence, 802.

The only issue presented at a preliminary trial of present insanity is whether the accused has sufficient soundness of mind to appreciate the charges against him and the proceedings thereon, and to enable him to make a proper defense, and, therefore, whether he may be compelled to proceed with the trial of the main issue of guilty or not guilty. 23 Corpus Juris Secundum, 240.

The broad question, of course, is whether the accused, insofar as it may devolve upon him, may have a full, fair, and impartial trial. A component part of this question is whether the accused is mentally competent to make a rational defense. It is proper to inquire whether the accused, by reason of insanity, comprehends his position, whether he has mind and discretion which will enable him to appreciate the charge against him and the proceedings thereon, or whether he is mentally capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands. 14 American Jurisprudence, 802, 803.

If a person arraigned for a crime is capable of understanding the nature and object of the proceedings against him, and rightly comprehends his own condi-

tion in reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subjects his mind may be deranged or unsound. 14 American Jurisprudence, 803.

Where on a preliminary trial of the question of present insanity the accused is found to be sane, the trial in chief should proceed; and where he is found to be insane, the trial should be postponed pending his recovery and the accused should be kept under restraint.

The sole object of the inquiry being to determine whether the accused shall be compelled to plead and proceed with his trial, if he is found insane his trial must be postponed until he has recovered his sanity, after which he may be tried.

An accused found to be insane should be committed to an asylum in accordance with the provisions of law. 23 Corpus Juris Secundum, 241, 242.

The provisions of Sections 13441-1 and 13441-2, General Code, above mentioned, as well as the provisions of earlier statutes relating to the same subject matter, extending back to 1831, are simply declaratory and in amplification of the common-law rules above mentioned relating to the subject matter.

Under an earlier form of the statutory provisions now contained in Sections 13441-1 and 13441-2, General Code, to wit, Section 7240, Revised Statutes, it was held that where a verdict was rendered finding the prisoner to be sane, error will not lie to review the proceedings, either before or after conviction, such proceedings constituting a trial preliminary to the trial on the indictment and not being final in their nature. *Inskeep* v. *State,* 35 Ohio St., 482; *Inskeep* v. *State,* 36 Ohio St., 145.

We have made diligent search but have been unable to find any decisions of the higher courts of this state

with reference to the nature of the issue presented at a preliminary trial of present insanity, but have found two Common Pleas Court decisions based on the provisions of Section 7240, Revised Statutes, which, as above mentioned, were similar to the provisions of Sections 13441-1 and 13441-2, General Code, to the general effect that the only issue presented at a preliminary trial of present insanity is whether the accused has sufficient soundness of mind to appreciate the charges against him and the proceedings thereon, and to enable him to make a proper defense. Those cases are in accord with the common-law rule hereinbefore mentioned. *State* v. *O'Grady,* 3 N. P., 279, 5 O. D., 654; *State* v. *Myers,* 7 N. P., 288, 8 O. D., 679.

Statutes of a general nature providing for commitment of the insane are inapplicable to insanity proceedings designed to determine whether an accused may be tried, in view of his mental condition, such proceedings being merely incidental to the criminal charge and following the practice in criminal cases. 23 Corpus Juris Secundum, 241.

From the authorities above mentioned it is clear that the sole purpose of the proceedings to examine into the question of sanity or insanity of the accused, prescribed in Section 13441-1, General Code, is to determine whether the accused has sufficient soundness of mind to appreciate the charge against him and the proceedings thereon, and to enable him to make a proper defense, and, therefore, whether he may be compelled to proceed with the trial of the main issue of guilty or not guilty. It is also clear that such proceedings are merely incidental to the criminal charge and follow the practice in criminal cases.

A finding and adjudication of insanity in such proceedings therefore simply amount to a finding and adjudication that at the time such proceedings are had the accused has not sufficient soundness of mind to ap-

preciate the charges against him and the proceedings thereon, and to enable him to make a proper defense.

The finding and adjudication having the restricted operation mentioned, the phrase, "until he be restored to reason," appearing in the last clause of Section 13441-2, General Code, i. e., "provided, that if the court deem it advisable, it shall commit such person to the Lima State Hospital until he be restored to reason, and upon being restored to reason the accused shall be proceeded against as provided by law," means until the accused has been restored to sufficient soundness of mind to appreciate the charges against him and the proceedings thereon, and to enable him to make a proper defense.

Consequently in this case the only issue presented is whether the accused petitioner has been restored to sufficient soundness of mind to appreciate the charges against him and the proceedings thereon, and to enable him to make a proper defense.

On this issue this court, giving full effect to the presumptions attending the adjudication of insanity, finds, from the evidence presented, in favor of the petitioner.

It is therefore ordered and adjudged that the petitioner be discharged from the custody of the respondent and returned by him to the custody of the sheriff of Mahoning county, Ohio, to be proceeded against according to law on the indictment. It is further ordered that the state of Ohio pay the costs of this proceeding in the manner provided by law.

In the case of *State, ex rel. Wyman,* v. *Turk,* 62 Ohio App., 227, 23 N. E. (2d), 644, this court held that a person under indictment for murder who, prior to the trial therefor, had been committed to the Lima State Hospital because of insanity, pursuant to the provisions of Sections 13577, 13608 and 13614, General Code, then in effect, which were similar to the provisions of Sections 13441-1 and 13441-2, General Code, now in effect, must,

in order to obtain his release by writ of *habeas corpus,* show that he has sufficient mental capacity to furnish counsel facts which ought to be given at the trial for his crime, and also that he does not have that character of mental unsoundness as to make reasonably probable that, if. allowed to remain at large, he will endanger the life, property, safety, peace, health or morals of the public.

In that decision, this court erroneously failed to take into consideration the common-law rules above mentioned as to the nature and purpose of a proceeding by the court in which an indictment is pending, before the trial of such indictment; to examine into the question of the sanity or insanity of the accused, and the restricted nature of the issue presented at such examination; and to consider that the statutes relating to such examination are simply declaratory of and in amplification of the common-law rules applicable thereto and that such proceeding both at common law and under the rulings of the Supreme Court of this state constitutes merely a preliminary hearing in a criminal case incidental to the criminal charge and following the practice in criminal cases, upon which the decision in this case is based.

Insofar as that decision requires a person under commitment to the Lima State Hospital, pursuant to the provisions of Sections 13441-1 and 13441-2, General Code, in order to obtain his release from such institution by writ of *habeas corpus,* to show that he does not have that character of mental unsoundness as to make reasonably probable that, if allowed to remain at large, he will endanger the life, property, safety, peace, health or morals of the public, in addition to showing that he has sufficient mental capacity to furnish counsel facts which ought to be given at the trial of his crime, such decision is overruled.

If it is desirable for the public welfare that the

proceeding, by the Common Pleas Court in which an indictment is pending, to examine into the question of the sanity or insanity of the person under indictment, shall have a purpose and effect different from that held in this opinion, it is the function of the Legislature to so provide.

So that there may be no misunderstanding as to the effect of the decision in the instant case, we deem it advisable to call attention to the fact that a commitment to the Lima State Hospital, made pursuant to the provisions of Section 13441-3, General Code, when the defendant pleads "not guilty by reason of insanity," and is acquitted on the sole ground of his insanity, stands on an entirely different basis than a commitment pursuant to the provisions of Sections 13441-1 and 13441-2, General Code, and that the issue presented in an action for writ of *habeas corpus* by a person committed pursuant to the provisions of Section 13441-3, General Code, is different from the issue presented in a similar action where the commitment is based on the provisions of Sections 13441-1 and 13441-2, General Code.

*Petitioner discharged.*

MIDDLETON, P. J., and JACKSON, J., concur.